STEARNS-ROGER MFG. CO. v. BROWN.

PORTLAND GOLD MIN. CO. v. SAME.

(Circuit Court of Appeals, Eighth Circuit. April 21, 1902.)

Nos. 1,650, 1,651.

1. RIGHT OF APPEAL—TEMPORARY INJUNCTION—PARTY NOT RESTRAINED.

One who is not restrained from the performance of any act or from the pursuance of any course of conduct by an injunction is not legally aggrieved by the order granting it, and has no right to appeal from such order.[1]

[1] See Appeal and Error, vol. 2, Cent. Dig. § 951 [j].

2. SAME—ORDER ISSUING DISCRETIONARY.

The right to exercise a sound judicial discretion in granting or refusing a temporary injunction is vested in the trial court, and not in the appellate court, and its orders should not be disturbed on appeal unless they are violative of the rules of equity which have been established for the guidance of the exercise of its discretion.

3. PATENTS—PRELIMINARY INJUNCTION—INFRINGEMENT—REVIEW ON APPEAL.

Where the determination of the question of infringement on the hearing of an appeal from an order granting a temporary injunction would not be final, but one of the parties to the suit would be entitled to a consideration and decision of the same issue at the final hearing, the appellate court will defer the decision of the question until after that hearing.

4. SAME—TEMPORARY INJUNCTION NOT GRANTED UNLESS INFRINGEMENT CLEAR.

It is the general rule that a temporary injunction should not be granted on ex parte affidavits in a suit for the infringement of a patent where the question of infringement is grave and difficult, and it is not clear that the defendant is guilty of infringement.

5. SAME—TEMPORARY INJUNCTION CONTINUED UNTIL FINAL HEARING ON PROPER BOND.

But in the appellate court the presumption is that the trial court rightfully found infringement, and even where that question is grave, and its decision doubtful, an order granting a temporary injunction will not necessarily be reversed, where the court below has required the complainant to give bond to protect the defendant against loss from the erroneous issue of the injunction; and a final determination of the question of infringement cannot be made until the final hearing, if no better scheme can be devised to protect both parties from loss in the interim.

6. LACHES—PATENTS—TEMPORARY INJUNCTION—REASONABLE DELAY.

Repeated willful trespasses confer no right to continue them; and mere delay, for any reasonable length of time, unaccompanied by such acts or conduct of the owner of the patent, and such facts and circumstances as amount to an equitable estoppel, will not deprive him, either on the ground of laches or of estoppel, of his right to a preliminary injunction, or to any other relief to which he would otherwise be entitled.

7. SAME—DELAY DURING LITIGATION OVER VALIDITY OF PATENT NOT LACHES.

Delay in prosecuting other infringers while the validity of the patent is in active litigation does not constitute laches.

8. PATENTS—PRELIMINARY INJUNCTION—CONTINUING INFRINGEMENT WARRANTS.

A continuing infringement on the complainant's monopoly is always a sufficient ground for a preliminary injunction in the absence of countervailing facts, because there is no other adequate remedy for the loss which constantly repeated trespasses entail.

(Syllabus by the Court.)

Appeals from the Circuit Court of the United States for the District of Colorado.

These are appeals from an order granting a motion for a preliminary injunction to restrain the Stearns-Roger Manufacturing Company, a corporation, from manufacturing or selling the Pearce turret ore-roasting furnace until the final hearing of this suit. After a spirited and protracted litigation, Horace F. Brown, the complainant, had established the validity of the first claim of letters patent No. 471,264, for improvements in ore-roasting furnaces, which had been issued to Mary C. Brown on March 22, 1892, and assigned to him. Extraction Co. v. Brown, 104 Fed. 345, 43 C. C. A. 568; Id., 110 Fed. 665, 49 C. C. A. 147. The Stearns-Roger Manufacturing Company had long been engaged in manufacturing and selling the Pearce turret ore-roasting furnaces, which were constructed in substantial conformity to the description contained in letters patent No. 488,797, issued to Richard Pearce on December 27, 1892. Brown had notified Pearce in 1893 that these furnaces were infringements of his patent, and had requested him to cease infringing, but Pearce had

denied that his furnaces constituted infringements of Brown's patent, and had continued their manufacture and sale. The Portland Gold Mining Company is a corporation engaged in mining and milling ore. It is not a manufacturer or vendor of furnaces. In July, 1900, the Stearns-Roger Manufacturing Company made a contract with the Portland Gold Mining Company to construct in a large mill for the reduction of ore which the mining company was about to build, three Pearce turret ore-roasting furnaces for the sum of .$45,000. The manufacturing company was engaged in performing this contract, and the mill, which was to cost about $600,000, and the furnaces, which were indispensable to its operation, were approaching completion. when the complainant, Brown, exhibited his bill in the court below, alleged that these Pearce turret furnaces infringed upon his patent, and prayed for the usual injunction and accounting. The defendants answered that the Pearce turret furnaces were not infringements upon the complainant's monopoly; that the Stearns-Roger Company was manufacturing and selling them, and that it was building three of these furnaces for the mining company, which the latter was about to use in its new mill. The mining company also pleaded that a preliminary injunction would compel it to install other furnaces in its mill: that this would delay the completion and the commencement of the operation of the mill for several months, and would entail upon it a loss of $1,200 a day during this delay. Upon these pleadings and upon affidavits a motion for a preliminary injunction was heard and decided by the circuit court, and the order of that court was that upon the filing by the complainant of a bond in the sum of $10,000 a temporary injunction should issue restraining the Stearns-Roger Company until the final hearing of this case from manufacturing or selling any Pearce turret ore-roasting furnaces except the three furnaces in process of construction for the Portland Gold Mining Company. No injunction was granted against the completion of these furnaces or against their use by the mining company.

Leonard E. Curtis and Lucius M. Cuthbert (Henry T. Rogers and Daniel B. Ellis, on the brief), for appellants.

Douglas Dyrenforth and Philip C. Dyrenforth, for appellee.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

SANBORN, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The primary question on an appeal from an order granting a temporary injunction is whether or not the injunction evidences an error in the exercise of its sound judicial discretion by the court which issued it. There are established legal principles for the guidance of that discretion, and where they are violated the action of the court below should be corrected. But, unless there is a plain disregard of some of the settled rules of equity which govern the issue of injunctions, the orders of the courts below on this subject should not be disturbed. The law has placed upon these courts the duty to exercise this discretion. It has imposed upon them the responsibility of its exercise wisely, and has left them much latitude for action within the rules which should guide them; and, if there has been no violation of those rules, an appellate court ought not to interfere with the results of the exercise of their discretion. The right to exercise this discretion has been vested in the trial courts. It has not been granted to the appellate courts, and the question for them to determine is not how they would have exercised this discretion, but whether or not the courts below have exercised it so carelessly or unreasonably that they have passed beyond the

wide latitude permitted them, and violated the rules of law which should have guided their action.

The complainant applied, upon an adjudicated patent, for an injunction to restrain the Stearns-Roger Manufacturing Company and the Portland Gold Mining Company from constructing and using their Pearce turret ore-roasting furnaces which the manufacturing company was building under a contract with the mining company, and which the mining company intended to use when they were completed. He also asked for a general injunction against the manufacture, sale, or use by the defendants of any of the Pearce furnaces. The court refused to issue any injunction against the mining company. It refused to enjoin either company from constructing and using the three furnaces in process of erection. But upon the execution and filing of a bond in the sum of $10,000 to indemnify the manufacturing company for any damages it should sustain if the preliminary injunction was subsequently dissolved or modified, it enjoined the manufacturing company from making or vending any more Pearce furnaces until the final determination of this suit. This does not seem to be an unjust or an unreasonable course of action. The mining company took and has prosecuted a separate and independent appeal from the order granting the injunction against the manufacturing company. But as the injunction does not restrain the mining company from doing any act either alone or jointly with the manufacturing company, the mining company could not have been legally aggrieved by the order, and it had no right to appeal from it. Its appeal is accordingly dismissed.

The remaining question is whether or not the order enjoining the manufacturing company during the pendency of this suit from building and selling more Pearce furnaces after it installed the three that were contracted to the mining company was an unlawful exercise of the discretion of the circuit court. Counsel for the manufacturing company insist that this order was violative of the established rules of equity jurisprudence, because the Pearce furnace was not an infringement upon the patent to Brown, because the complainant had been guilty of such laches that he was not entitled to an ad interim injunction, and because there was no proof that the complainant would sustain such injury from the continued infringement as would warrant an injunction. The crucial question in this case—the question which must ultimately determine it on the merits—is whether or not the manufacture, sale, and use of the Pearce furnace is an infringement upon Brown's monopoly. There are cases in which the question of infringement may be finally determined on appeals from orders granting temporary injunctions, and where this can be done it is always competent, and often prudent, for an appellate court to consider and decide it on such an appeal. But this is not one of those cases. The complainant properly joined the manufacturing company and the mining company as defendants in this court, because they were jointly making and preparing to use the three Pearce furnaces which they were about to install in the new mill of the mining company. The mining company has answered that these furnaces do not infringe upon the patent to Brown, and it is entitled to a decision of that issue upon the evidence and testimony

which will be presented at the final hearing of this case. It had no right to appeal from the order granting the injunction, and its appeal has been dismissed. It would not be estopped by any decision of the question of infringement which this court might make on the ex parte affidavits presented on this appeal, but it would still be entitled to a later hearing and decision of the same question in this very case after the various witnesses have been subjected to examination and cross-examination in the usual course of a preparation for a final hearing. It is therefore reasonably certain that the question of infringement cannot be authoritatively decided upon this appeal, and that it must, in any event, be finally considered and determined upon other evidence which will be produced at the hearing. In view of this fact, and also because testimony taken under examination and cross-examination is much more satisfactory and far more reliable than the ex parte affidavits which this record contains, and because the affidavits might lead to one conclusion and the testimony to another, this court declines to enter upon a consideration and determination of the question of infringement upon this appeal.

Counsel for the manufacturing company invoke the conceded rule that, where it is not clear that the defendant is guilty of infringement, and that question is grave and difficult, a temporary injunction should not be granted on ex parte affidavits. Sprague Electric Ry. & Motor Co. v. Nassau Electric R. Co., 95 Fed. 821, 37 C. C. A. 286; Hatch Storage Battery Co. v. Electric Storage Battery Co., 100 Fed. 975, 976, 41 C. C. A. 133, 134. But while this rule prevails in all its force in the trial court, it is met in the appellate court by another of great cogency,—by the rule that where the court below has considered a question, and made a finding on conflicting evidence, its conclusion is presumptively correct, and it ought not to be disturbed unless an obvious error has intervened in the application of the law, or some serious mistake has been made in the consideration of the facts. Kinloch Tel. Co. v. Western Electric Co., 113 Fed. 659; National Hollow Brake-Beam Co. v. Interchangeable Brake-Beam Co., 106 Fed. 693, 716, 45 C. C. A. 544, 567; Mann v. Bank, 86 Fed. 51, 53, 29 C. C. A. 547, 549, 57 U. S. App. 634, 637; Tilghman v. Proctor, 125 U. S. 136, 8 Sup. Ct. 894, 31 L. Ed. 664; Kimberly v. Arms, 129 U. S. 512, 9 Sup. Ct. 355, 32 L. Ed. 764; Furrer v. Ferris, 145 U. S. 132, 134, 12 Sup. Ct. 821, 36 L. Ed. 649; Warren v. Burt, 58 Fed. 101, 106, 7 C. C. A. 105, 110, 12 U. S. App. 591, 600; Plow Co. v. Carson, 72 Fed. 387, 388, 18 C. C. A. 606, 607, 36 U. S. App 448, 456; Trust Co. v. McClure, 78 Fed. 209, 210, 24 C. C. A. 64, 65, 49 U. S. App. 43, 46; Exploration Co. v. Adams, 104 Fed. 404, 408, 45 C. C. A. 185, 188. The court below has considered this question of infringement on the conflicting evidence which the affidavits present, and has concluded that the trespass of the defendant is clear. Moreover, the rule which the defendant invokes does not apply with nearly as much force to a case like that at bar, in which the complainant furnishes ample security to indemnify the defendant against any loss which results from an erroneous issue of the injunction, as it does to one in which such a bond has not been given. It is by no means obvious that the court below was or that it was

not in error in its decision of the question of infringement on the evidence before it. Whether it was so or not can be determined only by an examination and study of the evidence and a comparison of the two furnaces,—a study and comparison which we should not hesitate to make were it not for the fact that it would be practically futile, and that it might result in contradictory and confusing decisions upon different states of facts in the same case. No opinion is expressed upon this question of infringement. But the injunction should not be dissolved on the ground that this issue is doubtful, because the order and the bond furnish as complete protection to both parties against loss as can be devised, because the presumption is that the finding of the trial court is right, and because a final determination of the question of infringement cannot be made in this case on this appeal, and a decision of it might lead to confusing and contradictory opinions upon different states of facts in the same case.

It is contended that the complainant was guilty of such laches that he was not entitled to a preliminary injunction. The patent in suit was issued on March 22, 1892. In May, 1893, the owner of the patent notified the manufacturing company or its predecessor that its Pearce furnace was an infringement, and in June that charge was denied. On January 4, 1897, Brown brought his suit against the Metallic Extraction Company, in which, after a protracted and expensive litigation, the validity of his patent was finally established on October 8, 1900. Extraction Co. v. Brown, 104 Fed. 345, 43 C. C. A. 568. The bill in this suit was exhibited on April 24, 1901. The doctrine of laches is an equitable principle, which is applied to promote, never to defeat, justice. It is a branch of the principle of equitable estoppel. Where a patentee, by deceitful acts, silence, or acquiescence, lulls an infringer into security, and induces him to incur expenses or suffer losses which he would not otherwise have sustained, courts of equity apply the doctrine of laches on the principle that one ought not to be permitted to deny the existence of facts which he has intentionally or recklessly induced another to believe to his prejudice. There is nothing of that character in this case. The manufacturing company was informed that Brown claimed its furnace was an infringement in 1893. It then had the option to retire from its manufacture and sale, or to proceed with it, and take the chances. It chose the latter alternative. Brown did not induce it to make this choice. The company made its own choice with its eyes open, and with full notice of Brown's claim, and it has ever since continued to follow it against the protest and in spite of the notice of Brown to it to desist. One who, with full knowledge of a patentee's claim of infringement, and against his protest, continues to trespass, cannot, on the ground of the estoppel or laches of the patentee, successfully defend a suit for infringement brought, or a motion for a preliminary injunction made, within any reasonable time. Repeated willful trespasses establish no right to their continuance. And mere delay by a patentee to bring his suit or to apply for his preliminary injunction for any reasonable length of time after an infringer is informed of his trespass, unaccompanied with such acts of the patentee and such facts and cir-

cumstances as amount to an equitable estoppel, will not deprive him, either on the ground of laches or of estoppel, of his right to a temporary injunction or to a recovery. Moreover, delay in prosecuting other infringers during the time while the validity of a patent is in litigation does not constitute laches. American Bell Tel. Co. v. Southern Tel. Co. (C. C.) 34 Fed. 795, 802; Edison Electric Light Co. v. Sawyer-Man Electric Light Co., 3 C. C. A. 605, 53 Fed. 592; Green v. Barney (C. C.) 19 Fed. 420; Norton v. Can Co. (C. C.) 57 Fed. 929, 933. The complainant was therefore guilty of no laches between January 4, 1897, and October 8, 1900. There was no unreasonable delay after the decision of October 8, 1900, was filed. The complainant exhibited his bill within seven months after the determination of the validity of his patent. There were no acts or conduct of the complainant, no facts or circumstances between the issue of his patent in 1892 and the commencement of his suit against the Metallic Extraction Company, on which to base an equitable estoppel in favor of the Stearns-Roger Manufacturing Company. It knowingly exercised its option to make and sell its furnaces in spite of Brown's patent and his notice to them to desist. Brown was guilty of no laches in this case that deprived him of his right to the preliminary injunction.

Finally, it is contended that the order granting the injunction should be reversed because there was no proof of such threatened irreparable injury to the plaintiff as would warrant it, while there was evidence that the manufacturing company was solvent, and that the issue of the injunction would cause it great loss. A continuing trespass is always good ground for the issue of an injunction in the absence of countervailing considerations, because a multiplicity of suits for damages is never an adequate remedy for the loss which constantly repeated trespasses entail. Upon this ground, in the absence of other considerations, the complainant was entitled to his injunction. Manufacturing Co. v. Booth, 78 Fed. 878, 24 C. C. A. 378. In a litigation like this it is impossible for either party to escape without some loss. All that the courts can do is to make such orders and to pursue such a course as will enable the parties to reach a determination of their respective rights with as little loss as possible. The affidavits in this case have been carefully considered, and the damages likely to result to the respective parties from the issue of and the refusal to issue this injunction have been thoughtfully balanced, in vain, to find a more just and equitable order for the protection of the rights of the parties to this suit than that which was made by the court below. It permitted the completion and use of the furnaces in process of construction, thus preventing any loss to the mining company. It restrained the manufacture and sale of other infringing furnaces, thus protecting the rights of the complainant. And it required the complainant to make a bond for $10,000 to indemnify the manufacturing company against possible loss from the erroneous issue of the injunction, thus securing the latter company as far as possible against damages from the chances of the litgation. It was a wise and provident exercise of the judicial discretion of the court below, and it is affirmed.