## GUILFOIL v. HAYES.
### No. 330.

District Court, E. D. Virginia, Norfolk Division.

April 2, 1936.

James E. Heath and S. R. Brittingham, Jr., both of Norfolk, Va., for complainant.

William L. Parker, of Norfolk, Va., for respondent.

WAY, District Judge.

Complainant, a citizen and resident of New York, has filed her bill of complaint against the defendant, a citizen and resident of Virginia. The only relief sought by the bill is to declare void a will probated by the clerk of the circuit court of Princess Anne county, Virginia, on May 28, 1934, in an ex parte proceeding in which complainant did not in any way participate and of which she had no notice. The grounds relied on to set aside the will are that the testator was not mentally competent to make a will at the time of the execution of the paper writing probated by the clerk, and that the alleged will was procured by the undue influence of the defendant, the beneficiary therein.

No appeal from the order of probate entered by the clerk (Virginia Code, § 5249, as amended by Acts 1932, c. 58) was taken by any person interested to the circuit court of said county, so that the bill filed by complainant in this court is the first attack that has been made upon the

probate of said will. The amount in controversy exceeds $3,000.00 exclusive of interest and costs.

The defendant has filed a motion to dismiss upon the sole ground that this court is without jurisdiction of the controversy presented by the bill of complaint. Section 5259 of the Code of Virginia, upon the provisions of which the complainant relies to maintain the present proceeding in this court, is quoted at length in foot note 1.[1] Under the provision of the Virginia statutes, the complainant upon the entry of the order of probate by the clerk had the option to pursue either of two remedies: She could (within one year) appeal from the clerk's order to the court "whose clerk, or deputy, has made the order"[2] or (within two years) "proceed by bill in equity *to impeach or establish* the will, on which bill a trial by jury shall be ordered to ascertain whether any, and if any, how much of what was so offered for probate, be the will of the decedent." Upon the hearing of the case whether brought before the court by appeal or by bill in equity, the court in its discretion may "require all testamentary papers of the same decedent to be produced, and direct the jury to ascertain whether any, or if there be more than one, which of the papers produced, or how much of what was so produced, be the will of the decedent." Section 5259. Such bill in equity must be filed in the court in the clerk's office of which the will attacked was probated. No other court of the Commonwealth has any jurisdiction whatever to entertain the bill.

The rule by which to determine whether or not this court has jurisdiction of the controversy presented by the bill, is stated in Farrell v. O'Brien, 199 U.S. 89, at pages 110, 111, 25 S.Ct. 727, 733, 50 L. Ed. 101, where the prior decisions of the Supreme Court cited and relied on by counsel in this case are reviewed, as follows:

"Let us, then, first deduce the principles established by the foregoing authorities as to the power of a court of the United States over the probate or revocation of the probate of a will. An analysis of the cases, in our opinion, clearly establishes the following:

"First. That, as the authority to make wills is derived from the state, and the requirement of probate is but a regulation to make a will effective, matters of pure probate, in the strict sense of the words, are not within the jurisdiction of courts of the United States.

"Second. That where a state law, statutory or customary, gives to the citizens of the state, in an action or suit inter partes, the right *to question at law the probate of a will or to assail probate in a suit in equity,* the courts of the United States, in administering the rights of citi-

---

[1] "Motion for probate may be ex parte; when and by whom suit may be brought in such case, to impeach or establish will.— Any court having jurisdiction of the probate of wills under section fifty-two hundred and forty-seven may, however, without summoning any party, proceed to probate and admit the will to record, or reject the same. After a sentence or order under this section or under section fifty-two hundred and forty-nine, a person interested, who was not a party to the proceeding, may proceed by bill in equity to impeach or establish the will, on which bill a trial by jury shall be ordered to ascertain whether any, and if any, how much of what was so offered for probate, be the will of the decedent. The court may also, if it deem proper, require all testamentary papers of the same decedent to be produced, and direct the jury to ascertain whether any, or if there be more than one, which of the papers produced, or how much of what was so produced, be the will of the decedent. If the sentence or order be made by the court in the exercise either of its original jurisdiction or an appeal from the clerk, such bill shall be filed within two years from the date of such order made by the court. If no appeal be taken from a sentence or order made by the clerk under section fifty-two hundred and forty-nine, the bill shall be filed within two years from the date of such order or sentence by the clerk. If no such bill be filed within that time, the sentence or order shall be forever binding. No bill shall be filed under this section except in the court in which, or in the clerk's office of which, the will was admitted to probate. (Code 1887, § 2544.)"

[2] "Any person interested may, within one year after the entering of such an order, appeal therefrom as a matter of right, upon giving bond as provided by law to the court whose clerk, or deputy, has made the order." Part of section 5249, Code of Virginia, as amended in 1932.

(These statutes [section 5249 and 5259] were amended in 1934, but the amendments had not become effective when the will in question was probated on May 28. 1934.)

zens of other states or aliens, will enforce such remedies.

"The only dispute possible under these propositions may arise from a difference of opinion as to the true significance of the expression 'action or suit inter partes,' as employed in the second proposition. When that question is cleared up the propositions are so conclusively settled by the cases referred to that they are indisputable. Before coming to apply the propositions we must, therefore, accurately fix the meaning of the words 'action or suit inter partes.'" (Italics supplied.)

The appeal in Farrell v. O'Brien, supra, was taken from a decree of the circuit court for the State of Washington, so that the law of that state concerning the probate of wills was controlling as to the nature of the remedy to contest a probated will. The applicable Washington statute is set forth by the court in the opinion (199 U.S. 89, at pages 113, 114, 25 S.Ct. 727, 735, 50 L.Ed. 101) as follows:

"Proceedings to contest a will after admission to probate, or to secure probate after a certificate of rejection, are regulated by the following sections of the Code:

"'If any person interested in any will shall appear within any one year after the probate or rejection thereof, and, by petition to the superior court having jurisdiction, contests the validity of said will, or pray to have the will proven which has been rejected, he shall file a petition *containing his objections and exceptions to said will, or to the rejection thereof.* Issues shall be made up, tried, and determined in said court respecting the competency of the deceased to make last will and testament, or respecting the execution by the deceased of such last will and testament under restraint or undue influence or fraudulent representation, or for any other cause affecting the validity of such will.' [Ballinger's Anno.Codes and Stat.] § 6110.

"'Upon the filing of the petition referred to in the next preceding section, a citation shall be issued to the executors who have taken upon them the execution of the will, or to the administrators with the will annexed, and to all legatees named in the will residing in the state, or to their guardians if any of them are minors, or their personal representatives if any of them are dead, requiring them to appear before the court on a day therein specified, to show cause why the petition should not be granted.' Id. § 6111.

"'If no person shall appear within the time aforesaid, the probate or rejection of such will shall be binding, save (as) to infants, married women, persons absent from the United States, or of unsound mind, a period of one year after their respective disabilities are removed.' Id. § 6112." (Italics supplied.)

With regard to the Washington statute, the Supreme Court said (199 U.S. 89, at pages 114, 115, 25 S.Ct. 727, 735, 50 L.Ed. 101): "We are of opinion that the sections in question authorize a proceeding for contest only before the court which has admitted the will to probate or rejected the application made for probate, and that the authority thus conferred concerning the contest is an essential part of the probate procedure created by the laws of Washington, and does not, therefore, cause a contest, when filed, to become an ordinary suit between parties. This is plainly indicated by the fact that the proceeding provided by the statute concerns not only revocation of the probate of a will, but also the right to petition for the probate of a will where an application to probate it had been previously rejected. The context of the legislation in question also clearly establishes that the authorized proceeding is but supplementary to, and a continuation of, the original proceeding in probate. This is indicated both by the form of the petition which is required to be filed and the character of the proof which may be considered on that petition. That the statute does not contemplate a formal suit, but a mere summary and ancillary proceeding, is shown by the circumstance that the petitioner is merely required to state in his petition 'his objections and exceptions to said will, or to the rejection thereof,' and on the statement of these objections in the petition, without the formality of the technical pleadings customary in ordinary suits inter partes, the statute requires that specified issues be then made up for hearing. And, further, the terms of § 876 treat the contest as not an ordinary suit between parties, since it is made the duty of the court to revoke the probate if, for any reason, the will is invalid, or if 'it is not sufficiently proved to have been the last will of the testator.' Moreover, it is evident that the statute contemplates that the court, when acting on a contest filed under its provisions, is not confined to the

exertion of powers which would properly be exerted in an ordinary suit inter partes, since the statute causes a decree in favor of the petitioner, revoking a will already admitted to probate, to inure not only to the benefit of the particular contestant, but to be operative as to the whole world. This follows from the provision of the statute saying that if the court finds in favor of the petitioner who sought the revocation of a probate 'the will and the probate thereof shall be annulled and revoked.' "

There is a distinction between the Washington statute upon which the decision in Farrell v. O'Brien was based and the provisions of the Virginia statute upon which complainant relies to sustain the bill in this cause. It does not appear that a person desiring to contest the probate of a will under the procedure in Washington had any other remedy than that provided in the statute quoted above, whereas under the Virginia procedure, he may, as already pointed out, choose between two lines of procedure, namely: An appeal to the court in the clerk's office of which the will was probated, or, he "may proceed by *bill in equity* to impeach or establish the will, on which bill a trial by jury shall be ordered." However, they are alike in that only one court of the State is given jurisdiction over the proceeding.

Sutton v. English, 246 U.S. 199, 38 S. Ct. 254, 257, 62 L.Ed. 664, a more recent decision, went up from a federal court sitting in Texas and involved the construction of a statute of that state. The court said:

"But it is established by repeated decisions of the Supreme Court of Texas that under the present Constitution the district courts have no jurisdiction to annul by an original proceeding the action of a county court in probating a will, their jurisdiction in the premises being confined to a review by appeal or certiorari, which are in effect but a continuation of the probate proceedings. It is further held that under a statutory provision (article 5699) reading, 'Any person interested in any will which shall have been probated under the laws of this state may institute suit in the proper court to contest the validity thereof, within four years after such will shall have been admitted to probate, and not afterward,' such a suit must be instituted in the court in which the will was admitted to probate, that is to say, in the county court and that it calls for an exercise of original probate jurisdiction. * * *

"The present suit being, in an essential feature, a suit to annul the will of Mary Jane Hubbard, and a proceeding of this character being by the laws of Texas merely supplemental to the proceedings for probate of the will and cognizable only by the probate court, it follows from what we have said that the controversy is not within the jurisdiction of the courts of the United States."

The decision of the court in In re Armistead's Estate (D.C.S.D.Miss.1935) 4 F. Supp. 606, is in point in principle although the facts may be distinguishable in one respect from the facts of this case. In the Armistead Case, a citizen of Louisiana named as the sole beneficiary in the will of a citizen of Mississippi, procured the probate of the will in common form by the chancery court of the county of the last residence of the testator and qualified as executor.

On the same day the only child of the decedent, a citizen of Mississippi, filed a petition as permitted by the Mississippi statute to contest the validity of the will on the ground of undue influence and lack of testamentary capacity. Thereupon the proponent of the will sought to remove the contest to the District Court for the Southern District of Mississippi on the ground of diversity of citizenship and that it was of a civil nature involving more than the jurisdictional amount. The Mississippi statute provided that "any person interested may, at any time within two years, *by petition or bill,* contest the validity of the will probated without notice; and an issue shall be made up and tried as other issues to determine whether the writing produced be the will of the testator or not," etc. Code Miss.1930, § 1609.

While as already suggested, the facts in that case differ somewhat from those of the instant case, in that the nonresident who sought to remove the contest to the federal court had by probating the will apparently already submitted herself to the jurisdiction of the state court, yet the decision of the court seems to have been based upon the rule laid down by the Supreme Court in Farrell v. O'Brien and Sutton v. English, that where the proceeding provided for the contest of the will is in reality but supplementary to and a continuation of the original proceedings in

probate the Federal Courts are without jurisdiction.

The fact that the Virginia statute, after providing for trial by jury, does not further prescribe in detail the steps to be followed in such a proceeding is, I think, of some significance. A proceeding by "bill in equity" when the steps incident thereto are not expressly defined in the statute carries on its face certain characteristics which are ordinarily too well known and appreciated to require restatement. This is illustrated in the decision of the Supreme Court of Appeals in Connolly v. Connolly, 32 Grat. (73 Va.) 657, in which a bill was filed pursuant to the statute to set aside the probate of a paper writing, which had been admitted to probate as the will of one Connolly. There was a final decree in the cause establishing the paper as the will of Connolly which was affirmed on appeal. Subsequently an interested person who was an infant at the time of the probate tendered a bill of review in the trial court alleging among other things that she had discovered evidence which would prove that the paper writing probated as Connolly's will was in fact a forgery and that the beneficiary knew that fact at the time the writing was offered for probate. The circuit court refused to permit the bill of review to be filed, from which ruling an appeal was taken. In the opinion reversing that decision Judge Burks discussed at length the nature of the proceeding in Virginia to impeach a probated will by bill in equity. In answering the contention that the court in such a proceeding was merely a court of probate, Judge Burks said (32 Grat. [73 Va.] 657, 661):

"But it is contended by the learned counsel for the appellees, that on a bill filed under our statute to impeach the validity of a will, which has been admitted to probate in an ex parte proceeding, the court exercises the functions of a court of probate merely, and not of a court of equity, and that its jurisdiction is exhausted when the jury have rendered a verdict on the issue, and the court, approving the same, has pronounced its decree thereon; and hence, that a bill of review, which is a remedy appropriate only to courts of equity in the exercise of their ordinary powers, will not lie to correct errors in such a case.

"There is no doubt that the statutory proceeding was designed as a secondary or final probate, and that the verdict of a jury on the issue prescribed is an essential feature in such proceeding. It is the verdict which ascertains and determines 'whether any, and if any, how much of what was offered for probate be the will of the decedent.' But the court, though limited in its functions, is still a court of equity, and acts as such to the extent of its powers over the subject confided to it by the statute. The proceeding is commenced by bill, denominated in the act a 'bill in equity.' It must be framed as any other bill in equity would be framed, except that it must be confined in its aim and object to the specific relief contemplated by the statute—namely, the determination by a jury, on an issue to be directed and tried, of the validity or invalidity of the testamentary paper or papers which are drawn in question. Process to convene the parties issues, as in other cases in equity suits, and the pleadings are of the same nature. The court, by decree, settles and directs the issue. The trial may be had at the bar of the chancery court, or in some court of common law; but wherever had, the chancery court alone in which the suit is pending can grant a new trial. Lamberts v. Cooper's Ex'r et al., 29 Grat. [70 Va.] 61, 66, and cases cited." (Italics supplied.)

Continuing, Judge Burks said: "It results from what has been said, that in our opinion the court in which a bill is filed under the statute to impeach or establish a will is not a mere court of probate, but something more. It is a court of equity, and though its powers over the subject confided to it are limited, yet it may, on a proper bill, review and correct errors in its proceedings after final decree in the cause."

And referring to the decision in Coalter's Ex'r et al. v. Bryan et al., 1 Grat. (42 Va.) 18, Judge Burks added: "This was the extent of the decision, and we do not question its soundness. But in the opinion of the court, delivered by Judge Baldwin, it is said, that the jurisdiction of the court in such a case 'is merely that of a court of probate, and to be exercised not by the court, but by a jury under its supervision.' The remark in its broad terms was not necessary to the decision of the question presented. It must be taken in reference to the subject matter; and although the functions of the court are limited to matters of a probate nature, it by no means follows that those functions are not to be performed by the court acting as

a court of equity, and clothed with all the powers of a court of equity, to give and secure the specific relief authorized by the statute. See also what is said by the same judge in Malone's Adm'r and others v. Hobbs and others, 1 Rob. [40 Va.] 346, 410 [39 Am.Dec. 263]." (Italics supplied.)

It also appears that in the Virginia decisions some distinction has been drawn between an original proceeding by bill in equity such as this and an appeal from the order of the clerk probating a will. Thus in Tyson v. Scott, 116 Va. 243, 81 S.E. 57, it was held that an appeal from the clerk's order entered pursuant to section 5249, is not the institution of a "new suit" but the prolongation and continuance of the old one.

On the other hand, in Lamberts v. Cooper's Ex'r, 29 Grat. (70 Va.) 61, a proceeding by bill in equity, the court pointed out that the issue of devisavit vel non is a statutory proceeding, and that the determination of that issue is the sole object, not a mere incident of the suit. In Kirby v. Kirby, 84 Va. 627, 5 S.E. 539, the lower court appointed a receiver. The appellate court held that such action was erroneous, because in such a proceeding a court of equity does not proceed under its general jurisdiction, with all the powers incident thereto but can exercise only the special limited power conferred upon it by the statute and that it acts *as a court of probate,* with a single object in view, namely, to ascertain by a jury trial whether the paper in question is or is not the will of the decedent.

In Hartman v. Strickler, 82 Va. 225, Judge Lewis referred to the distinction between the verdict of a jury upon the issue of devisavit vel non and upon an issue out of chancery and pointed out that in the former the verdict is entitled to the same weight as in an action at common law and is to be tested in the appellate court by the same rules, whereas the object of an issue out of chancery is to satisfy the conscience of the chancellor, who may set aside the verdict, if dissatisfied with it and direct another issue or dispose of the cause without the aid of another jury.

In Cowper v. Sargeant, Judge, 160 Va. 562, 563, 169 S.E. 920, application was made for a writ of prohibition against the corporation court of the city of Norfolk to prohibit that court from entertaining a bill in equity attacking an order of the clerk of that court probating a will. The writ was sought upon the ground that the corporation court of Norfolk was without any jurisdiction to entertain a bill in equity. Prior to the creation of the court of law and chancery of that city (1894) the corporation court had general jurisdiction in civil matters but the act creating the law and chancery court took away the general jurisdiction of the corporation court in civil matters. However, under another statute, both of those courts, as well as the circuit court of the city, were given jurisdiction "in all matters concerning the probate and recordation of wills, the appointment, qualifications and removal of fiduciaries," etc. Code Va.1919, § 5935. The appellate court upheld the jurisdiction of the corporation court to entertain such "bill in equity" and I think the following quotation from the opinion is indicative of the appellate court's views as to the true character of a proceeding by "bill in equity" pursuant to section 5259, (160 Va. 562, 169 S.E. 920, 922):

"In Queensbury v. Vial, 123 Va. 219, 96 S.E. 173, 174, it is held that a court of equity has no inherent jurisdiction to set aside wills on the ground of fraud, undue influence, or lack of testamentary capacity on the part of the testator. 'Jurisdiction of these questions is to be found solely in the statute on the subject.'

"In Kirby v. Kirby, 84 Va. 627, 5 S.E. 539, Judge Lewis said: 'It is contended that in a suit of this description a court of equity does not proceed under its general jurisdiction, with all the powers incident thereto, but can exercise only the special and limited powers conferred upon it by the statute; that it acts as a court of probate, with a single object in view, namely, to ascertain by a jury trial whether the paper in question is or is not the will of the decedent; that it can perform no other act, nor grant any further relief; that it has no jurisdiction over the estate of the decedent, and can make no order respecting it.

" 'This position is fully sustained by the decisions of this court'—citing Coalter's Ex'r v. Bryan, 1 Grat. (42 Va.) 18; Lamberts v. Cooper's Ex'r, 29 Grat. (70 Va.) 61. The writ of prohibition will be denied."

In another recent case, Dickens v. Bonnewell, 160 Va. 194, 168 S.E. 610, 612, the court, after discussing the procedure incident to probate and the limited instances in which wills could be probated at

all in England in 1785, the year the statute now under consideration was first enacted, quoted, apparently with approval, from the opinion by Judge Baldwin in Coalter's Ex'r v. Bryan, 1 Grat. (42 Va.) 18, as follows:

"In discussing the changes in the law on the subject brought about by the act of 1785, the court said: 'The obvious purpose of these provisions is, 1. To recognize the ex parte probat of wills, both of realty and personalty; 2. To extend the privilege of requiring a reprobat, so as to embrace both; 3. To prescribe a period of limitation for such reprobat; 4. To change the citation for reprobat, so as to require it to be of those interested in sustaining the will, instead of those interested in opposing it; 5. To shift the final probat from the court of original probat to the court of chancery, to be there exercised by the instrumentality of a jury.' * * *

"That part of the act of 1785 which allows any court having jurisdiction of the probate of wills to admit the same to ex parte probate, and a bill in equity to be filed to impeach it upon an issue of devisavit vel non, is substantially embodied in section 5259 of the present Code, under which the bill was filed in the instant case. To all intents and purposes the only material changes in the provisions of the present statute relate to the time within which the bill may be filed before the first probate becomes final and unimpeachable, and to the amendments which were made necessary by the new statute (section 5249), which confers jurisdiction upon the clerks of circuit and corporation courts to receive wills for probate. It may at least be said that no alterations have been made in the provisions of the old statute which in any wise affect the question here involved, or the construction given the statute upon which the rule laid down in Coalter's Ex'r v. Bryan is based."

It seems to me that the rule discussed in Dickens v. Bonnewell, supra, and which has long prevailed in Virginia also throws some light on the nature of this proceeding, namely, that on the trial of the issue of devisavit vel non in the equity proceeding as well as in the trial of the same issue upon an appeal from the clerk's order, the order of probate of the clerk is not even prima facie evidence of its correctness, but the whole matter comes up de novo with the same burden of proof resting upon the proponents of the will as rested upon them initially. In other words, the order of probate or refusal of probate by the clerk neither operates for nor against the proponents of a will but for all essential purposes they are in either proceeding a second time offering the will for probate. For this reason, I feel compelled to attach great importance to what the court said in that case, namely, that one effect of the statute is "To shift the *final probate* from the court of original probate to the court of chancery, to be there exercised by the instrumentality of a jury." This is especially significant when it is recalled that the suit is required by the statute to be instituted in the court before whose clerk the original probate or attempted probate was had. When the effect of these rulings is considered in the light of the ruling of the appellate court with respect to the jurisdiction of the corporation court of Norfolk (Cowper v. Sargeant, Judge, supra) and the reasons given for that ruling, it becomes clear, I think, that the "bill in equity" authorized by the statute, is after all, in substance and reality, although not in form as already pointed out, merely a continuation of the original probate proceeding. The sole object and purpose of the proceeding by bill in equity is identical with that of an appeal under section 5249, namely, to set aside the clerk's order, and the procedure employed in each instance to achieve the desired result is identically the same, trial by a jury of the issue of devisavit vel non, as at common law and not as an issue out of chancery. And if the verdict is against the will theretofore probated or in favor of the will theretofore refused probate, the decree in one proceeding and the judgment of the same court, in the other, are in substance and effect the same. These matters are discussed at length because it would not for a moment be contended, I assume, that an appeal as allowed by the statute, from the order of the clerk, could be taken or removed to a federal court, since no one would contend that such appeal is not *in form as well as in substance* a continuation of the original probate proceeding, a point decided in Tyson v. Scott, 116 Va. 243, 81 S.E. 57.

The following decisions are among those cited by complainant to sustain the jurisdiction of this court: Williams v. Crabb (C.C.A.7) 117 F. 193, 59 L.R.A. 425; Richardson v. Green (C.C.A.9) 61 F. 423,

542

428, certiorari denied 159 U.S. 264, 15 S. Ct. 1042, 40 L.Ed. 142; Wart et al. v. Wart (C.C.Iowa) 117 F. 766; Sawyer v. White (C.C.A.8) 122 F. 223, opinion by Circuit Judge Sanborn; and McDermott v. Hannon et al. (D.C.N.Y.) 203 F. 1015. Federal jurisdiction was upheld in each of these cases but it seems to me the statutes there involved are clearly distinguishable from the Virginia statute.

In Williams v. Crabb (C.C.A.) 117 F. 193, 59 L.R.A. 425, the Illinois statute (Rev.St.1899, c. 148, § 7) pursuant to which the suit was instituted, differed from the Virginia statute in at least three respects, namely, (1) while it provided for the attack on the probate of a will to be made by "bill in chancery" in the court in which the will was probated, it also provided that an issue of law should be made up "whether the writing produced be the will of the testator or testatrix or not," to be tried by a jury, "according to the practice in courts of chancery in similar cases," (2) that at the trial the oath of the witnesses at the time of the first probate was admissible as evidence for such weight as the jury considered it to be entitled, and, more important, (3) the statute limited the attack to the *contest of the validity of a probated will.*

In Richardson v. Green (C.C.A.9) which involved the construction of a statute of Oregon, the court said: "The suit for *contesting a will* after the probating of the same in Oregon is undoubtedly one between parties, and binding only the parties thereto, and hence is such a one as a circuit court of the United States could take jurisdiction of when the amount in controversy is sufficient, and the parties plaintiff and defendant citizens of different states." The court emphasized the distinction *"between the probate of a will and an action to try the validity of a will between parties."* The Oregon law provided that after a will had been probated any one interested in the estate could attack the will in what was termed a "direct proceeding."

Wart et al. v. Wart (C.C.) 117 F. 766. A statute of Iowa provided that if when a will was offered for probate, no contest was made as to its validity and the instrument was admitted to probate, parties in interest could thereafter *attack the validity of the will by an original proceeding.* A petition conforming to that procedure was filed in the Federal Court, attacking a will theretofore probated on the ground of mental incapacity of the testator.

In Sawyer v. White (C.C.A.8) 122 F. 223, 227, the suit was upon a deed and also a will, alleged to have been procured by undue influence. The will had been admitted to probate. In the opinion by Circuit Judge Sanborn, it is said: "The action to contest the validity of this will is a statutory proceeding under sections 4622, 4623, 1 Rev.St.Mo.1899, p. 1102, which provide that any person interested in the probate of any will may contest its validity by a petition to the circuit court of the state filed within five years after the will is probated, and that upon such a petition an issue shall be made up—whether the writing produced was the will of the testator or not."

McDermott v. Hannon (D.C.N.Y.) 203 F. 1015, involved the construction of a New York statute which provided that any person interested, etc., in any will admitted to probate in that state might, within two years, question the validity of the probate thereof in an action in the Supreme Court for the county in which such probate was had. The petition after alleging other jurisdictional requisites alleged the probate of the will, lack of mental capacity of the testator at the time the will was made and that the will was procured by the fraud and undue influence of the defendants and asked to have the will declared null and void for those reasons.

The controlling point in each of the foregoing decisions upholding the jurisdiction of the Federal Courts seems to me to be that the particular statutes involved merely provided a method by an original suit at law or in equity to attack a *probated will.* In other words, the statute permitting such a suit was limited to that single object and in that respect differed greatly from the Virginia statute. That the proceeding by bill in equity pursuant to the Virginia statute is in all essentials a mere continuation of the original probate proceeding, as distinguished from the statutes involved in the decisions to which I have just referred, is shown by the provisions of our statute which are not limited to an attack upon a *probated will* but include also not only establishing a will which has been refused probate by the clerk but go farther still and authorize the court, if it deem proper, to "re-

quire all testamentary papers of the same decedent to be produced, and direct the jury to ascertain whether any, or if there be more than one, which of the papers produced, or how much of what was so produced, be the will of the decedent."

The extent to which a Federal Court would be called upon to exercise what is essentially probate jurisdiction if such court were held to have jurisdiction in proceedings instituted pursuant to section 5259, is well illustrated by the facts in McComb v. Farrow, 128 Va. 455, 104 S.E. 812, 813. There the decedent had left three wills, one made in 1910, one in 1913 and one in 1914, and the jury was called upon to decide which, if any, was the decedent's true last will and testament. While the application for probate in McComb v. Farrow was made in open court and was inter partes, with a trial by jury, the procedure and the scope of the inquiry did not differ in any real essential from what it would have been had the matter been brought before the court by a bill in equity attacking an order of probate or refusal of probate by the clerk. The issue submitted to the jury in that case was, "whether any paper, and there being more than one paper, which of the papers produced be the will of the decedent."

While it is true that the instant bill of complaint is apparently confined to an attack upon a probated will the decision of the motion does not, it would appear, turn upon the facts of the particular case presented by the allegations but rather upon the true nature of the proceeding which the statute authorizes, that is to say, whether such proceeding is merely "an action or suit inter partes" to assail the probate of a will, or is in reality "but supplementary to, and a continuation of, the original proceeding in probate." And if I construe the statute correctly all of the questions and contests incident to strictly probate proceedings may be and not infrequently are presented to the court in a proceeding by bill in equity pursuant to section 5259 of the Virginia Code, all of which demonstrates such proceeding is essentially, though not in form perhaps, a mere continuation of the original probate proceedings.

For the foregoing reasons, the motion to dismiss the bill for want of jurisdiction will have to be sustained.